UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LILIA ALVARADO,<br><br>Petitioner,<br><br>v.<br><br>TODD BLANCHE, *et al.*,<br><br>Respondents. | Case No. C26-2442-SKV<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC"). She filed, through counsel, this 28 U.S.C. § 2241 habeas action, challenging her prolonged immigration as unconstitutional under the Fifth Amendment. Dkt. 1. Respondents filed a return (Dkt. 6) and Petitioner filed a traverse (Dkt. 7).

Having reviewed the parties' submissions and the governing law, the Court DENIES the petition (Dkt. 1) for the reasons set forth below.

## I. BACKGROUND

The Court incorporates by reference the factual summaries in *Alvarado v. Wamsley*, C25-02374-DGE, 2026 WL 456817, at *1 (W.D. Wash. Feb. 18, 2026) ("*Alvarado I*"), and *Alvarado*

*v. Wamsley*, C26-01148-DGE, 2026 WL 1543238, at *1 (W.D. Wash. June 2, 2026) ("*Alvarado II*").

Petitioner is a citizen of Mexico who entered the United States without inspection on May 15, 1991. *Alvarado I*, 2026 WL 456817, at *1. She was placed into removal proceedings in 1996, and an immigration judge ordered her removed *in absentia*. *Id.* The Board of Immigration Appeals ("BIA") denied her appeal of the removal order on February 24, 1997. *Id.* Petitioner voluntarily returned to Mexico on January 13, 2000. *Id.*

It is unclear when Petitioner reentered the United States after voluntarily departing in 2000, but she surrendered to ICE on January 29, 2010, due to an outstanding warrant. *Id.* On March 26, 2010, Petitioner filed a "motion to reopen" with the Seattle Executive Office for Immigration Review ("EOIR"), which was denied on April 22, 2010.[1] *Id.*

In 2017, Petitioner sought a stay of deportation, which was later denied by U.S. Citizenship and Immigration Services ("USCIS") on August 1, 2025. *Id.* Petitioner also applied to register permanent residence or adjust status in 2019, but USCIS denied the application after declining jurisdiction on the basis of Petitioner's final order of removal. *Id.*

On September 2, 2025, Petitioner filed a motion to reopen BIA jurisdiction. *Id.* On September 5, 2025, ICE arrested Petitioner after she reported to the Yakima ICE office. *Id.* Petitioner was transferred to the NWIPC, where she claimed a fear of removal to Mexico. *Id.* USCIS concluded Petitioner could not be referred for a reasonable fear interview until after her motion to reopen that was then-pending with the BIA had been decided. *Id.* On February 18, 2026, the court granted Petitioner limited habeas relief and ordered Respondents to refer

[1] The record is not clear, but the Court assumes Petitioner filed a motion to reopen removal proceedings.

Petitioner to an asylum officer for a reasonable fear determination. *Id.* at *4. USCIS conducted that interview on February 26, 2026. *Alvarado II*, 2026 WL 1543238, at *1.

Petitioner filed a petition for review and a motion to stay removal in the Ninth Circuit. *Id.* (citing *Alvarado v. Blanche*, No. 26-1256 (9th Cir. 2026)). The Ninth Circuit issued a temporary stay of removal on March 5, 2026, which appears to currently remain in effect while Petitioner's full motion to stay removal and the Government's motion for summary disposition are pending. *Id.*; Dkt. 6 at 4.

On March 26, 2026, Petitioner separately requested a custody redetermination with the immigration court, which was denied after the immigration judge found no materially changed circumstances. *Alvarado II*, 2026 WL 1543238, at *1.

Petitioner filed her second habeas petition on April 6, 2026, requesting the court order an administrative bond hearing. *Id.* at *1-2. The court denied the petition for failing to articulate a proper legal basis for obtaining the requested relief. *Id.* at *2-3. The court subsequently denied Petitioner's motion for reconsideration, but noted that Petitioner could file a new petition "that sufficiently articulates her position on the constitutional question left open in [*Johnson v. Arteaga-Martinez*, 596 U.S. 573 (2022)]" and "put[s] forth a proper due process analysis and argument[.]" *Alvarado v. Wamsley*, 2026 WL 1831261, at *2 (W.D. Wash. June 25, 2026) ("*Alvarado III*").

On July 13, 2026, Petitioner filed the instant petition. Dkt. 1.

## II. LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). A habeas petitioner must prove by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or

treaties of the United States[.]" *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

## III. DISCUSSION

Petitioner asserts her eleven-month immigration detention without a custody hearing violates her due process rights under the Fifth Amendment when assessed under the framework articulated in *Mathews v. Eldrige*, 424 U.S. 319 (1976). Dkt. 1 at 12-18. She also asserts her detention is no longer reasonably related to her immediate removal. *Id.* at 19. She seeks release or a bond hearing. *Id.* at 21-22.

Respondents assert that Petitioner is detained under 8 U.S.C, § 1231(a), emphasize that this is Petitioner's third habeas petition, and argue that the relief Petitioner seeks here was already previously denied in *Alvarado II*. Dkt. 6 at 1-2. Thus, according to Respondents, Petitioner's substantive due process claim is barred by the abuse of writ doctrine. *Id.* at 7-9. As for Petitioner's procedural due process claim, Respondents also apply the *Mathews* framework and conclude that due process does not entitle Petitioner to a bond hearing. *Id.* at 10-14.

### A. *Mathews* Does Not Provide the Framework for Petitioner's Claim

As noted, the parties brief the procedural due process claim under *Mathews*, *see* Dkts. 1 at 12-15, 6 at 11-14, but that case does not provide the appropriate framework for Petitioner's prolonged detention claim. The *Mathews* test resolves the question of whether the administrative procedures provided by the government are constitutionally sufficient. *Mathews*, 424 U.S. at 334. In resolving that question, courts consider (1) the private interest affected, (2) the government's interest, and (3) the value added by additional or substitute procedural safeguards in the situation before the court. *Id.* It balances the benefits or burdens of "additional or substitute procedural safeguards." *Id.* at 335. It does not, however, resolve the issue of whether

*any particular procedure*, such as a bond hearing, must be provided in a given case. *Banda v. McAleenan*, 385 F. Supp. 3d 1099, at 1118 (W.D. Wash. 2019). Courts in this District most commonly apply the *Mathews* test in cases challenging a noncitizen's arrest and redetention, particularly involving noncitizens who claim to have been unlawfully redetained after having been conditionally released. *See, e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316 (W.D. Wash. 2025); *Reyes v. Hermosillo*, 2026 WL 507678 (W.D. Wash. Feb. 24, 2026).

Here, Petitioner does not challenge the circumstances of her arrest or redetention. *See generally* Dkt. 1. Rather, she asserts that due process entitles her to release or a bond hearing because she has not been provided an "individualized determination by a neutral decisionmaker finding that [her] detention remains necessary." *Id.* at 13-14. Thus, the relevant question is whether Petitioner is entitled to that bond hearing (*i.e.*, *any* procedure) and not, by contrast, whether the administrative procedures provided to Petitioner thus far have been constitutionally sufficient. *See Banda*, 385 F. Supp. 3d at 1106; *see also Amatbek Uulu v. Scott*, 2026 WL 865813, at *5 (W.D. Wash. Mar. 30, 2026). Accordingly, the Court declines to assess whether Petitioner's alleged prolonged detention entitles her to a bond hearing under the *Mathews* framework.

Relatedly, Petitioner fails to engage with the statutory and regulatory schemes governing her detention beyond acknowledging, without further discussion, that "[t]he Government may assert detention authority under 8 U.S.C. § 1226 or 8 U.S.C § 1231, depending on the procedural posture of the removal case." Dkt. 1 at 10. Instead, she appears to assume noncitizens will eventually become entitled to a bond hearing once their detention reaches a certain point, regardless of the statute authorizing it. *See id.* ("In prolonged detention cases, due process requires a meaningful opportunity to be heard before a neutral decisionmaker."). Courts have

recognized, however, that due process may require different procedures in different statutory contexts. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022); *see also Arteaga-Martinez*, 596 U.S. at 576 (holding that § 1231(a)(6) does not mandate six-month bond hearings with a clear-and-convincing burden on the government). Petitioner does not engage with these cases or otherwise explain why the statutory framework governing her detention is constitutionally inadequate, a critical omission for a petition challenging detention authority. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008) ("To determine whether Congress has authorized his detention, we must first identify the statutory provision that purports to confer such authority on the Attorney General."). *See also Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court.").

Petitioner does rely on *Rodriguez Diaz* in her petition, but for an unavailing argument. Dkt. 1 at 11 (citing *Rodriguez Diaz*, 53 F.4th 1189 (9th Cir. 2022), but omitting a pin citation). She asserts *Rodriguez Diaz* "addressed due process challenges to continued detention under [§ 1226(a)]" and "confirm[ed] that due process challenges to immigration detention require a fact-specific analysis [under *Mathews*.]" *Id.* at 11-12. However, the court in *Alvarado I* found Petitioner's detention governed under § 1231(a), 2026 WL 456817, at *2, and Petitioner acknowledged in her supplemental briefing filed in *Alvarado II* that she is detained under § 1231, 2026 WL 1543238, at *2. Petitioner does not acknowledge her shift in position, explain why she now believes she is detained under § 1226, or explain why *Rodriguez Diaz* still supports her position, notwithstanding her detention being governed by § 1231.

In *Alvarado II*, the court acknowledged that "at the heart of" Petitioner's second habeas petition was a request for an administrative bond hearing, but concluded she failed to articulate a

proper legal basis for obtaining that relief. 2026 WL 1543238, at *2. Nevertheless, after denying reconsideration, the court explained she could file a new petition that "put forth a proper due process analysis and argument identifying what Petitioner believes should be the standard for the [c]ourt to grant relief, identify how that standard applied to the facts of this case prohibits her continued detention without a bond hearing, and include all relevant legal authority." *Alvarado III*, 2026 WL 1831261, at *2.

However, other than her cursory *Mathews* analysis (which the Court rejects above), Petitioner again offers only limited legal authority and substantive analysis. *See generally* Dkts. 1, 7. For example, Petitioner cites *Zadvydas v. Davis*, 533 U.S. 678 (2001) in both her petition and traverse to support her claim for a bond hearing, *see* Dkts. 1 at 9, 7 at 2, but already acknowledged in her second habeas petition that *Zadvydas* did not discuss whether noncitizens subject to prolonged detention are entitled to bond hearings, *Alvarado II*, 2026 WL 1543238, at *3. And despite the court in *Alvarado III* expressly mentioning the potentially relevant and unanswered constitutional question left open in *Arteaga*, Petitioner does not cite, analyze, or discuss *Arteaga* anywhere in her petition. *See generally* Dkt. 1.

The Court finds the limited remaining legal support offered by Petitioner insufficient to establish legal entitlement to an individualized bond hearing or to demonstrate that her current detention is otherwise unlawful. *See*, *e.g.*, *Blanco Rodriguez v. Hernandez*, 2026 WL 1413204, at *4-6 (W.D. Wash. May 20, 2026) (declining to apply *Mathews* to a prolonged detention claim and denying habeas petition because the petitioner failed to establish that he was unlawfully detained). The Court therefore denies the petition as to Petitioner's procedural due process claim.

//

**B. Petitioner's Substantive Due Process Claim is Barred**

Petitioner further argues that her detention violates substantive due process because it is "no longer reasonably related to any immediate removal objective." Dkt. 1 at 19. Respondents contend that this claim merely repackages arguments that were, or should have been, raised in *Alvarado II* and therefore constitutes an abuse of the writ. Dkt. 6 at 7-10. The Court agrees.

"The doctrine of abuse of the writ generally forbids the reconsideration of claims that were or could have been raised in a prior habeas petition." *Alaimalo v. United States*, 645 F.3d 1042, 1049 (9th Cir. 2011) (citation and quotation marks omitted). The doctrine "defines the circumstances in which federal courts decline to entertain a claim presented for the first time in a second or subsequent petition for a writ of habeas corpus." *McCleskey v. Zant*, 499 U.S. 467, 470 (1991).

The statutory bar on successive petitions in 28 U.S.C. § 2244 does not apply to this § 2241 immigration habeas petition. *See Barapind v. Reno*, 225 F.3d 1100, 1111 (9th Cir. 2000). Instead of a rigid successive-petition bar, courts apply the common-law abuse of the writ doctrine in this context, which first requires the government to show, "with clarity and particularity," the petitioner's prior writ history, identify the claims raised for the first time, and allege abuse of the writ. *McCleskey*, 499 U.S. at 494. If the government meets that burden, the burden shifts to the petitioner to "disprove abuse" by showing cause and prejudice, or a fundamental miscarriage of justice. *Id.* at 494-95; *see also Eldridge v. Howard*, 70 F.4th 543, 551 (9th Cir. 2023).

Respondents have met their burden. In *Alvarado II*, the court considered and rejected Petitioner's contention that her removal was not reasonably foreseeable due to the Ninth Circuit's temporary stay. *Alvarado II*, 2026 WL 1543238, at *3. Here, the substance of

Petitioner's substantive due process claim is both vague and conclusory but points out that her removal is "presently stayed" and that her detention "is no longer reasonably related to any immediate removal objective." Dkt. 1 at 19. To the extent Petitioner maintains that her detention is not reasonably foreseeable on account of the stay, and thus unconstitutional, that argument was raised and rejected in *Alvarado II*. *See McCleskey*, 499 U.S. at 470; *Eldridge*, 70 F.4th at 552.

If Petitioner intended a different argument this time around, Petitioner still fails to show cause that would excuse her failure to raise it in her prior petition. In her reply, she asserts that the "length of detention creates a sliding scale of balancing a detainee's liberty interest at various points in time[.]" Dkt. 7 at 5. Thus, according to Petitioner, "a continually changing legal standard for civil detention" makes it impossible to relitigate interests under identical legal standards. *Id.* Petitioner does not support this argument with legal authority, but even if she had, still fails to explain what changed between her last petition and the instant that renders her substantive due process claim so different that it could not have been raised in her earlier petition.

Accordingly, the Court finds that the doctrine of abuse of the writ bars Petitioner's substantive due process claim.

## IV. CONCLUSION

For these reasons, the Court DENIES the petition (Dkt. 1).

Dated this 17th day of August, 2026.

S. KATE VAUGHAN
United States Magistrate Judge